IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

HONSHU SHIPPING CO, LTD,                    No C 04-1481 VRW

       Plaintiff,                              ORDER

       v

M/V TRADE ZALE, her engines,
machinery, equipment and
appurtenances, *in rem*,

       Defendant.
_____/

       This case arises out the collision of two foreign flag ocean-going vessels in international waters off the coast of Korea on January 31, 2004. Currently before the court is defendant M/V Trade Zale's (the "Trade Zale") motion to dismiss on the ground of forum non conveniens. Doc #25 (Def Mot). Because the court found this matter suitable for determination without oral argument, the hearing scheduled for March 24, 2005, was VACATED. Civ L R 7-1(b). Based upon the parties' memoranda and the applicable federal law, the court GRANTS the Trade Zale's motion to dismiss.

I

The following facts are not in dispute. On the evening of January 30, 2004, an ocean-going vessel, the M/V Diamond Ray (the "Diamond Ray"), was drifting in international waters off the coast of Ulsan, South Korea. The Diamond Ray is owned by plaintiff Honshu Shipping Co, Ltd ("Honshu") and flies the Maltese flag. During the early morning hours of January 31, 2004, the Trade Zale, which flies the flag of Antigua and Barbuda, was also drifting off the coast of Ulsan in international waters. Shortly before 3:00 am, the Trade Zale and the Diamond Ray collided. The ships were approximately 15 miles off the coast of Ulsan.

The two vessels remained locked together for approximately 60 hours off the coast of Ulsan before they were separated by salvage tugs on February 2, 2004. During these two days, the Ulsan Marine Police arrived on board both vessels to assist the crew and investigate the casualty.

After the separation, the Diamond Ray was towed to the port of Ulsan where it underwent repairs. The Trade Zale, however, was first towed to the port of Busan, Korea to unload her cargo and then proceeded to Ulsan to undergo repairs. Following the repairs in Korea, the Trade Zale continued her voyage and called at the ports of Long Beach and Oakland, California to unload some of her cargo. While in the port of Oakland on April 15, 2004, Honshu sought and obtained an order from this court to arrest the Trade Zale and subsequently arrested the vessel as security. At the same time, Honshu initiated the current action in this court against the Trade Zale interests for damages arising out of the January 31, 2004, collision (the "California action"). The Trade Zale was

released from arrest after security was posted on her behalf.

Several months later, the repairs to the Diamond Ray were completed in Ulsan, Korea, and the Diamond Ray prepared to depart Ulsan.  The Trade Zale interests, however, demanded security in the form of a Letter of Undertaking ("LOU") as an alternative to arresting the Diamond Ray in Ulsan.  A London-based company signed the LOU on behalf of the Diamond Ray and the vessel was allowed to depart the port of Ulsan.  The LOU provides that the matter of liability and assessment of damages shall be submitted to the exclusive jurisdiction of the Seoul Central District Court and shall be determined by Korean law.  On August 15, 2004, an action for damages arising from the January 31, 2004, collision was commenced by the Trade Zale interests against the Diamond Ray interests in the Seoul court (the "Korean action").  In September 2004, Korean counsel for the Diamond Ray interests acknowledged service of process in the Korean action.

On November 5, 2004, the Trade Zale filed the current motion to dismiss the California action on the ground of forum non conveniens in favor of the Korean action.  Doc #25.  Honshu opposes the Trade Zale's motion, arguing that this court should retain jurisdiction over the California action or alternatively, transfer the matter to the Southern District of New York pursuant to 28 USC § 1404(a).  Doc #40.

II

"The forum non conveniens determination is committed to the sound discretion of the trial court.  It may be reversed only when there has been a clear abuse of discretion."  Contract Lumber

3

1  <u>Co v P T Moges Shipping Co, Ltd</u>, 918 F2d 1446, 1448-49 (9th Cir
2  1990) (Goodwin, CJ).  In determining whether to dismiss a matter on
3  the ground of forum non conveniens, the court is guided by the
4  Ninth Circuit's observation that "'[i]t is in the field of
5  admiralty that our federal courts have applied the doctrine of
6  forum non conveniens most flexibly and over the longest period of
7  time.'"  Id at 1449 (quoting <u>Alcoa SS Co, Inc v M/V Nordic Regent</u>,
8  654 F2d 147, 153 (2d Cir 1981) (en banc)).

9         It is well-settled that "[i]n a motion to dismiss on the
10 ground of forum non conveniens, the burden of proving an
11 alternative forum is the defendant's," here the Trade Zale, "and
12 the remedy must be clear before the case will be dismissed."
13 <u>Contract Lumber</u>, 918 F2d at 1449 (citation and internal quotation
14 marks omitted).  Accordingly, the Trade Zale "must prove each of
15 the following:  (1) existence of an adequate alternative forum; (2)
16 choice of law does not militate in favor of retaining the case; (3)
17 private interest factors favor dismissal and (4) public interests
18 favor dismissal."  Id (citing <u>Gulf Oil Corp v Gilbert</u>, 330 US 501,
19 508-09 (1947) and <u>Piper Aircraft Co v Reyno</u>, 454 US 235, 247-52
20 (1981)).  "In carrying this burden, [defendant] must provide
21 sufficient information to enable the district court to balance the
22 parties' interests."  Id.

23         Finally, a "plaintiff's choice of forum is usually
24 entitled to great deference when plaintiff sues in its own home
25 forum, since it can be presumed to be convenient to plaintiff.
26 However, when a U[nited] S[tates] forum is chosen by a foreign
27 plaintiff," as Honshu has chosen in the present case, this choice
28 "is entitled to a lesser degree of deference."  <u>La Seguridad De</u>

1   **Centramerica SA v M/V Global Mariner**, 2002 US Dist LEXIS 6108, *4-5
2   (SD NY 2002); see **Piper Aircraft**, 454 US at 255 (stating that a
3   district court's "distinction between a resident or citizen
4   plaintiffs and foreign plaintiffs is fully justified").

### III

Applying these clear legal principles to the facts of the present case and conducting the appropriate balancing of interests, the court concludes that Korea would be a substantially more appropriate forum in which to litigate this matter.

### A

Initially the court notes that Honshu urges the court to jettison the balancing analysis employed by the Ninth Circuit in **Contract Lumber** and instead adopt a rigid "injustice standard" applicable to admiralty proceedings *in rem* (such as this case). Doc #40 at 10 (arguing that district courts, <u>regardless of any balancing test</u>, <u>must</u> exercise their jurisdiction unless an *in rem* defendant "can demonstrate that exercise of [such] jurisdiction * * * would work an injustice."). To support this argument, Honshu cites two Fifth Circuit cases that could arguably be read as creating this strict analytical standard for *in rem* proceedings. See **Motor Distributors Ltd v Olaf Pedersen's Rederi A/S**, 239 F2d 463 (5th Cir 1956); **Poseidon Schiffahrt GMBH v M/S Netuno**, 474 F2d 203 (5th Cir 1973).

For two reasons, however, the court declines to accept Honshu's invitation to adopt this strict standard. First, the Fifth Circuit has explicitly overruled **Poseidon Schiffarht** and

1  Motor Distributors inasmuch as they stand for a strict "injustice"
2  standard exception for *in rem* actions.  See Perusahaan Umum Listrik
3  Negara Pusat v M/V Tel Aviv, 711 F2d 1231, 1236 (5th Cir 1983)
4  ("Although we concede that Motor Distributors has spawned a line of
5  *in rem* cases in this circuit * * * that can be read to create an
6  exception to the [] balancing analysis, today we address * * *
7  whether they should be read this way.  Our answer to this question
8  is no.") (emphasis added).  Next, and more importantly, Honshu
9  provides the court with no case law, and the court can find none,
10 in which the Ninth Circuit mentions, much less adopts, the
11 "injustice" standard exception to the well-established balancing
12 test endorsed by the Supreme Court.
13     Accordingly, the court chooses to employ the Contract
14 Lumber balancing test.

### B

### *Adequate Alternative Forum*

18     "At the outset of any forum non conveniens inquiry, the
19 court must determine whether there exists an alternative forum."
20 Piper Aircraft, 454 US at 254n22.  The requirement of an adequate
21 alternative forum "is ordinarily satisfied when the defendant is
22 amenable to process in the other jurisdiction."  Contract Lumber,
23 918 F2d at 1450 (citation omitted).
24     The Trade Zale argues that Korea is clearly an adequate
25 alternative forum.  Doc #25 at 12.  Honshu (wisely) does not
26 seriously contend otherwise.  First, the Trade Zale is amenable to
27 process in Korea; in fact, the Trade Zale has already initiated an
28 action in the Seoul Central District (an action in which Honshu has

6

1   accepted service).  Next, lest there be any doubt, the Trade Zale
2   interests state that they will "voluntarily submit to the
3   jurisdiction of Korea."  Id.  Moreover, the Trade Zale interests
4   agree to waive the affirmative defense of statute of limitations in
5   Korea through January 31, 2006, as well as transfer the security
6   issued on the Trade Zale in the California action to the Korean
7   court so that the Diamond Ray interests have security in the Korean
8   forum.  Id at 13.  Finally, Honshu does not argue that Korean law
9   does not offer it a remedy or even less favorable procedural or
10  substantive law.

11      The Trade Zale has carried its burden of demonstrating
12  that an adequate alternative forum exists.

### C

*Applicability of United States Law*

"Before dismissing a case for forum non conveniens, a district court must first make a choice of law determination," Zipfel v Halliburton, 832 F2d 1477, 1482 (9th Cir 1987), as "the need to apply foreign law favors dismissal." Piper Aircraft, 454 US at 260n29 (citations omitted).  This factor alone, however, is not enough to warrant dismissal on the ground of forum non conveniens.  Id.

It is undisputed that United States law will not govern the California action.  Doc #40 at 10, Doc #25 at 14 ("If a maritime collision takes place on the high seas, the law common to the flags of both vessels should be applied by the [c]ourt") (citing The Belgenland, 114 US 355, 370 (1885)).  Despite this clear principle, and despite the Court's holding in Piper Aircraft,

1 Honshu asserts that the Trade Zale's "contention that application
2 of international law favors dismissal is incorrect and deserves
3 short shrift." Doc #40 at 11. Honshu bases its argument on the
4 idea that "[a]pplying foreign law is substantially easy for U[nited
5 [S]tates courts in 2005" because, pursuant to FRCP 44.1, "district
6 courts are no longer obliged to rely on the testimony of exert
7 [sic] witnesses about foreign law [and thus] foreign law can be
8 argued and briefed just as domestic law can." According to Honshu,
9 because no foreign law experts will have to be relied upon or
10 inconvenienced, the application of foreign law does not favor
11 dismissal. The court disagrees for two reasons.
12        First, Honshu's argument misses the principal point of a
13 choice-of-law analysis in adjudicating forum non conveniens
14 motions. The point of this inquiry is not to observe whether the
15 district judge can apply the choice-of-law principles learned in
16 law school or to examine and compare the substantive provisions of
17 the applicable foreign law with forum law. Rather, the point is to
18 "consider[] whether any particular choice of law determination
19 <u>mandates a certain forum</u>, [and] thus ending the forum non
20 conveniens dispute." <u>Lockman Foundation v Evangelical Alliance
21 Mission</u>, 930 F2d 764, 771 (9th Cir 1991) (emphasis added); see
22 <u>Contract Lumber</u>, 918 F2d at 1449 (stating the choice-of-law inquiry
23 must be undertaken to determine whether the applicable law
24 "<u>militates</u> in favor of retaining the case") (emphasis added). If
25 the applicable law does not mandate a particular forum (e g, an
26 American forum) then the choice-of-law inquiry is complete and the
27 court may move on to other (more dispositive) balancing factors.
28        Second, Honshu's assertion that FRCP 44.1 eradicates the

8

need for a district court to rely on foreign law experts in applying foreign law is hardly as "clear" a proposition as Honshu paints it to be. "Although, pursuant to Rule 44.1, courts may ascertain foreign law through numerous means, expert testimony accompanied by extracts from foreign legal materials has been and will likely continue to be the basic mode of proving foreign law." Universal Sales Co, Ltd v Silver Castle, Ltd, 182 F3d 1036, 1039 (9th Cir 1999) (citation omitted).

Accordingly, the court declines Honshu's invitation to wrestle, unaided by foreign law experts, with the admiralty law of Malta and Antigua and Barbuda (the flag states of the Diamond Ray and the Trade Zale). The second factor weighs in favor of dismissal.

D

*Private Interest Factors*

The private interest factors to be weighed include: (1) ease of access to sources of proof; (2) compulsory process to obtain attendance of hostile witnesses; (3) cost of transporting friendly witnesses and (4) other problems that interfere with an expeditious trial. Contract Lumber, 918 F2d at 1451.

The first private factor is the location of evidentiary sources. Honshu concedes that there is not a single piece of evidence located in the entire United States, much less in this particular district. Indeed, but for the adventitious event that the Trade Zale called at the port of Oakland after departing from Korea and was thus arrested here, there would be absolutely no connection between this district and the events at issue in this

9

case. The same is not true of Korea and the Korean court. The collision was investigated in Korea by Ulsan Marine Police who obtained statements from witnesses and crewmembers as well as documents from both vessels. The Korean Port State Control inspected both vessels in Korea after the collision. Both vessels sought refuge and were repaired in Korea. The salvage companies involved are Korean. Ulsan Radar Control has radar data of both vessels leading up to the collision as well as other vessels in the vicinity. Finally, Honshu states that there were various Korean "fishing vessels" adrift in the waters surrounding the Trade Zale and the Diamond Ray; these potential witnesses to accident most probably reside in Korea.

     It is true that none of the crewmembers of either ship is located in Korea; the majority reside in the Philippines and the remainder reside in Germany, Ukraine and Bulgaria. But while this fact does not necessarily favor dismissal to Korea, it in **no way** demonstrates that the United States is a more convenient forum, especially in light of the fact that all of these witnesses will necessarily have to appear in the Korean action already pending in Seoul. And, for what it is worth, the court notes that the Philippines is considerably closer to Korea (1,616 miles from Manila airport to Seoul airport) than San Francisco (6,987 miles from Manila airport to San Francisco International). [www.gc.kls2.com](www.gc.kls2.com) ("Great Circle Mapper"). Clearly, Korea and the Korean court can provide greater access to evidentiary sources.

     Turning to the second and third factors, it is important to note that **no** potential witnesses reside in the United States. Korea can provide greater accessibility to witnesses, be they

**10**

friendly or hostile.  Honshu does not argue that Korea lacks a compulsory process by which to obtain the attendance of unwilling witnesses.  Moreover, these witnesses will no doubt be involved in the Korean suit <u>already pending</u> in the Seoul Central District Court; it makes more sense to consolidate the witnesses' presentations in that court.  What is more, there is no doubt that the Korean action is going to go forward:  Honshu has obtained Korean counsel and accepted service of process in the action.

In light of the fact that (1) <u>no</u> potential witnesses reside in the United States, (2) <u>no</u> evidence is located in the United States (3) a substantial number of witnesses reside in Korea, (4) the majority of the vessels' crewmembers reside in the Philippines, closer to Korea than the United States, (5) a substantial amount of documentary evidence is located in Korea and (6) an action regarding this same collision is <u>already pending</u> in Korea, the court concludes that the relevant private factors <u>strongly</u> favor dismissing the California action in favor of the Korean forum.

### E

*Public Interest Factors*

"Public interest factors encompass court congestion, the local interest in resolving the controversy and the preference for having a forum apply a law with which it is familiar."  <u>Contract Lumber</u>, 918 F2d at 1452.  The first factor is a wash.  The only argument Honshu puts forward regarding the second factor is that this district has a local interest in resolving this controversy because "the Trade Zale posted security" in this district.  This

11

1 argument is without merit as (1) the fact that security was posted
2 in this district is completely a fortuitous event and (2) the Trade
3 Zale has agreed to transfer the posted security to Korea.
4 Accordingly, there is no local interest in resolving this
5 controversy.  United States law will not govern this controversy
6 and should the case remain here, this court will be called upon to
7 apply law with which it is unfamiliar.
8 　　　　　　The public interest factors weigh in favor of dismissing
9 this case in favor of the Korean forum.

**IV**

12 　　　　　　Honshu alternatively "requests" the court "simply
13 transfer [the case] to the Southern District of New York" pursuant
14 to 28 USC § 1404(a).  Doc #40 at 16.  Honshu's request is denied
15 for several reasons.
16 　　　　　　First, this "request" is procedurally improper.  If
17 Honshu believes that this case should be transferred to the
18 Southern District of New York, it should have filed a properly
19 noticed § 1404(a) motion for transfer pursuant to Civ L R 7.  It
20 did not; it simply added a paragraph at the end of its forum non
21 conveniens opposition requesting the court make the legal
22 conclusion that a venue transfer is warranted.
23 　　　　　　More importantly, the general average claims going
24 forward in the Southern District of New York against the Trade Zale
25 appear to be brought by <u>United States</u> companies (not Honshu) to
26 determine whether the cost of repairing the Trade Zale should be
27 borne, in part, by the companies that had cargo on the vessel.
28 Accordingly, these proceedings will <u>not</u> require witnesses and

**12**

1 evidence relevant to causation, fault and damages associated with
2 the collision that occurred in Korea.  Transferring this case to
3 New York will not make litigation between Honshu and the Trade Zale
4 more convenient; indeed, the opposite is true, as transferring the
5 case to New York would add an <u>additional</u> 1,523 miles distance from
6 the place at which the controversy arose and where the bulk of the
7 witnesses are likely found and in no way bring in a decision-maker
8 likely to be familiar with the applicable law.

## V

In sum, the court concludes that the Trade Zale has carried its burden of demonstrating (1) the availability of an adequate forum, (2) choice-of-law is not a dispositive consideration in this dispute and (3) that the private and public interests weigh heavily on the side of trial in the Korean forum. Accordingly, the court GRANTS the Trade Zale's motion to dismiss on the ground of forum non conveniens (Doc # 25).  This dismissal is, however, expressly conditioned on the Trade Zale (1) voluntarily submitting to the jurisdiction of the Korean court over this matter, (2) waiving any statute of limitations defense it may have against Honshu in the Korean forum and (3) transferring the security posted in this district to the Korean court in Seoul.

IT IS SO ORDERED.

/s/

VAUGHN R WALKER

United States District Chief Judge